# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Andre Williams,** | **Case No. 1:25-cv-00898-PAB** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **City of Willoughby, et al.** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is Giant Eagle, Inc.'s ("Giant Eagle") Motion to Dismiss ("Giant Eagle's Motion to Dismiss").  (Doc. No. 17.)  Plaintiff Andre Williams ("Williams") filed an Opposition on July 31, 2025, to which Giant Eagle replied on August 6, 2025.  (Doc. No. 19, 20.)

Also pending before the Court is Williams's Motion for Leave to File Surreply (the "Motion for Leave") and Williams's Motion to Strike Defendant Giant Eagle's Reply in Support of its Motion to Dismiss (the "Motion to Strike Giant Eagle's Reply").  (Doc. Nos. 22, 25.)  On August 15, 2025, Giant Eagle filed separate Opposition briefs to the Motion for Leave and the Motion to Strike Giant Eagle's Reply.  (Doc. Nos. 27 28.)  Williams filed separate Reply briefs on August 18, 2025.  (Doc. Nos. 29, 30.)

Further pending before the Court is Williams's Motion to Strike Affirmative Defenses (the "Motion to Strike Affirmative Defenses").  (Doc. No. 26.)  On August 22, 2025, the City of Willoughby ("Willoughby") and Officer Michael Sevel ("Sevel") filed their Opposition to the Motion to Strike Affirmative Defenses, to which Williams replied on August 27, 2025.  (Doc. No. 32.)

Additionally pending before the Court is Office Depot, LLC's ("Office Depot")[1] Motion to Dismiss ("Office Depot's Motion to Dismiss").  (Doc. No. 38.)  Williams filed an Opposition on November 17, 2025, to which Office Depot replied on December 11, 2025.  (Doc. Nos. 39, 44.)

Finally pending before the Court is Office Depot's Motion to Strike Plaintiff's Memorandum in Opposition to Office Depot's Motion to Dismiss ("Office Depot's Motion to Strike").  (Doc. No. 43.)  Williams did not file an Opposition.

For the following reasons:

1.      Williams' Motion to Strike Affirmative Defenses (Doc. No. 26) is DENIED;

2.      Williams' Motion for Leave (Doc. No. 22) is DENIED;

3.      Williams' Motion to Strike Giant Eagle's Reply (Doc. No. 25) is DENIED;

4.      Giant Eagle's Motion to Dismiss (Doc. No. 17) is GRANTED;

5.      Office Depot's Motion to Strike (Doc. No. 43) is DENIED; and

6.      Office Depot's Motion to Dismiss (Doc. No. 38) is GRANTED.

## I.      Allegations in the Amended Complaint.

Williams' Amended Complaint sets forth the following factual allegations:

8.      Plaintiff was arrested in May 2024 for a theft he did not commit.

9.      The accusation was based on unverified vehicle data and unconfirmed identity.

10.      Defendants failed to verify the video footage that later exonerated Plaintiff.

11.      Plaintiff spent a day in jail and was publicly humiliated.

12.      Charges were dismissed after months of emotional and reputational harm.

13.      Defendants kept Plaintiff's bond money despite dismissal.

---

[1] Office Depot asserts that it was "improperly sued as OfficeMax, Inc." (Doc. No. 38, PageID #224.)

14. Plaintiff lost his car rental business and paused the launch of his paperwork service.

15. Plaintiff experienced emotional and physical breakdown including PTSD, anxiety, weight gain, and sleeplessness.

16. His daughter was emotionally impacted, and the community ridiculed Plaintiff and his family.

17. Defendants exhibited racial bias by falsely identifying Plaintiff and ignoring opportunities to verify innocence.

(Doc. No. 12, ¶¶ 8–17.)

## II.    Procedural History

On May 5, 2025, Williams initiated this action by filing his Complaint naming Willoughby, Sevel, Giant Eagle and Office Depot as defendants.  (Doc. No. 1.)  On June 17, 2025, Giant Eagle filed a Motion to Dismiss.  (Doc. No. 9.)  In response, on June 11, 2025, Williams filed his Amended Complaint.  (Doc. No. 12.)

On July 25, 2025, Giant Eagle filed its Motion to Dismiss the Amended Complaint.  (Doc. No. 17.)  Williams filed an Opposition on July 31, 2025, to which Giant Eagle Replied on August 6, 2025.  (Doc. No. 19, 20.)

On August 8, 2025, the City of Willoughby and Sevel filed their Answer.  (Doc. No. 21.)

That same day, Williams filed the Motion for Leave seeking to leave file a proposed Surreply. (Doc. No. 22.)  Then, three days later, Williams filed two additional motions:  (1) the  Motion to Strike Giant Eagle's Reply,  and (2) the Motion to Strike Affirmative Defenses.  (Doc. Nos. 25, 26.)

On August 15, 2025, Giant Eagle filed separate Opposition briefs to the Motion for Leave and the Motion to Strike Giant Eagle's Reply.  (Doc. Nos. 27, 28.)  Williams filed separate Reply briefs on August 18, 2025.  (Doc. Nos. 29, 30.)

On August 22, 2025, Willoughby and Sevel filed their Opposition to the William' Motion to Strike Affirmative Defenses.  (Doc. No. 32.)  Williams filed a Reply on August 27, 2025.  (Doc. No. 33.)

While these Motions were pending, on October 1, 2025, Office Depot filed its own Motion to Dismiss.  (Doc. No. 38.)  Williams filed an Opposition on November 17, 2025, to which Office Depot replied on December 11, 2025.  (Doc. Nos. 39, 44.)  That same day, Office Depot filed a Motion to Strike Williams' Opposition.  (Doc. No. 43.)  Williams did not file an Opposition.

Accordingly, Williams' Motion to Strike, Williams' Motion for Leave, Williams' Motion to Strike Giant Eagle's Reply, Giant Eagle's Motion to Dismiss, Office Depot's Motion to Strike, and Office Depot's Motion to Dismiss are each ripe for review.

## III.    Analysis

### A.    Williams' Motion to Strike Affirmative Defenses

Williams' Motion to Strike sets forth four arguments for why certain affirmative defenses raised by Willoughby and Sevel should be stricken:

1.    Statute of Limitations – The events at issue occurred within the applicable limitations period for §1983, §1981, and related claims.

2.    Ohio R.C. Chapter 2744 Immunity – Not applicable to intentional torts and constitutional violations.

3.    Qualified Immunity – Inappropriate for resolution at pleading stage where factual disputes exist.

4.    Failure to State a Claim – Redundant and conclusory; this is not a true affirmative defense.

(Doc. No. 26, PageID #190.)

In their Opposition, Willoughby and Sevel argue that these four defenses "relate to the claims and provide fair notice to Plaintiff."  (Doc. No. 32, PageID #209.)  They argue that their Rule 12(b)(6)

4

defense "relates [to] the litigation and provides Plaintiff with fair notice of Defendants' intent to challenge the Amended Complaint's sufficiency."  (Doc. No. 32, PageID #210.)  They argue that they "have properly provided notice that some of Plaintiff's claims may be time barred, including but not limited to, Plaintiff's defamation claim."  (*Id.*)  They then argue that their O.R.C. § 2744 defense is proper "because it gives Plaintiff notice that his state law tort claims are barred by immunity."  (*Id.* at PageID #211.)  Finally, they argue that their qualified immunity defense "puts Plaintiff on notice that his federal constitutional claims may be barred."  (*Id.* at PageID #212.)

In his Reply, Williams argues that "Courts consistently strike 'failure to state a claim' as not a true affirmative defense because it adds nothing new."  (Doc. No. 33, PageID #214.)  He then argues that "Defendants vaguely claim 'some of Plaintiff's claims may be time-barred,' but fail to identify which counts, which statute, or which accrual date applies."  (*Id.* at PageID #215.)  Williams next argues that since "Defendants cite no authority extending 2744 immunity to intentional torts or federal claims, this defense must be stricken."  (*Id.*)  Williams then argues that "Defendants assert qualified immunity now to 'preserve it,' but the doctrine requires fact-specific analysis inappropriate at the pleading stage."  (*Id.*)  Williams' final argument is that "[l]eaving vague, boilerplate defenses in place forces Plaintiff to litigate blind, anticipating surprise arguments later" and that "[s]triking these defenses narrows the case to genuine disputes, conserves judicial resources, and prevents delay tactics."  (*Id.* at PageID #216.)

"The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The decision to strike an affirmative defense is discretionary.  *Operating Eng'rs Local 325 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 846 (6th

Cir. 2011)).  But motions to strike "are viewed with disfavor and are not frequently granted."  *Id.* (citing cases).  "A motion to strike should be granted if 'it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings.'"  *Id.* (quoting *Williams v. Jader Fuel Co.*, 944 F.3d 1388, 1400 (7th Cir. 1991)).

Courts have found that the heightened pleading standard of *Twombly/Iqbal* does not apply to affirmative defenses.  *Lindenbaum v. Energy Servs. Providers*, No. 1:21-CV-00764, 2021 U.S. Dist. LEXIS 133363, at *7 (N.D. Ohio July 19, 2021) (collecting authority) (Barker, J.).  As this Court explained in *Lindenbaum*:

> As such, to survive [a] Motion to Strike, [a defendant's] affirmative defenses need only provide [the plaintiff] with "fair notice of the nature of the defense." *Id.* "[G]eneral or boilerplate defenses are acceptable, even if they lack factual specificity, so long as it remains possible that the defenses relate to the claim at hand." *Fed. Trade Comm'n v. Stratford Career Inst.*, No. 16-CV-371, 2016 WL 3769187, at *2 (N.D. Ohio July 15, 2016). On the other hand, a defense may be struck as "insufficient if, as a matter of law, the defense cannot succeed under any circumstances or has 'no possible relation to the controversy.'" *Id.* (quoting *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822). In other words, if "the relevant legal standard for the defense makes the affirmative defense completely inapplicable, then the defense must be struck." *Id. See also Kavalec*, 2020 WL 1694560, at *4.

*Id.* at *8.

While Willoughby and Sevel's affirmative defenses are boilerplate, they provide fair notice of the nature of the defense and are related to the claims at hand:

> 12.    Plaintiff's Amended Complaint, in whole or in part, fails to state a claim upon which relief can be granted.
>
> 13.    Plaintiff's Amended Complaint, in whole or in part, is barred by the applicable statute of limitations.
>
> 14.    Plaintiff's Amended Complaint, in whole or in part, is barred by Chapter 2744 of the Ohio Revised Code.

6

15.    Plaintiff's Amended Complaint, in whole or in part, is barred by qualified
       immunity.

(Doc. No. 21, ¶¶ 12–15.)

First, the Rules of Civil Procedure expressly permit a party to raise a Rule 12(b)(6) defense

in an Answer.  *See* Fed. R. Civ. P. 12(h)(2)(A) ("Failure to state a claim upon which relief can be

granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a)"); Fed. R. Civ. P.

7(a)(2) ("Only these pleadings are allowed: (2) an answer to the complaint"); *see also Malibu Media,*

*LLC v. Doe*, No. 1:14CV2293, 2015 U.S. Dist. LEXIS 131335, at *7 (N.D. Ohio Sept. 29, 2015)

(denying motion to strike Rule 12(b)(6) defense raised in an answer because "the defense is sufficient

as it gives Malibu fair notice of the nature of the defense").  Second, asserting that a complaint is

barred by the statute of limitations is sufficient to place a plaintiff on fair notice of the defense.

*Artisan Est. Homes, LLC v. Hensley Custom Bldg. Grp., LLC*, No. 1:19-cv-566, 2022 U.S. Dist.

LEXIS 132185, at *20–21 (S.D. Ohio July 25, 2022) (denying motion to strike affirmative defense

the asserted the amended complaint is barred "due to the statute of limitations" because such a

statement is "sufficient to fairly notice [plaintiff] of the nature of [the] defense[]").

Third, the Court rejects Williams' argument that O.R.C. § 2744 immunity is "[n]ot applicable

to intentional torts and constitutional violations."  "Ohio appellate courts have consistently held that

political subdivisions are exempt from intentional tort claims, reasoning that the exceptions listed in

Ohio Rev. Code § 2744.02(B) only refer to negligence and do not provide a specific exception for

intentional torts."  *Harvey v. Franklin*, No. 4:23CV1518, 2025 U.S. Dist. LEXIS 182070, at *24–25

(N.D. Ohio Sept. 17, 2025) (colleting authority); *see also Gamarino v. Sycamore Twp.*, No. 23-3149,

2025 U.S. App. LEXIS 5181, at *12 (6th Cir. Mar. 3, 2025) (finding that "Defendants are immune in

their official capacities for . . . intentional-tort claims" under O.R.C. § 2744.02).  Therefore,

7

Willoughby and Sevel fairly put Plaintiff on notice that his state law claims may be barred pursuant to Chapter 2744 of the Ohio Revised Code.

Finally, courts have found that "a motion to strike under 12(f) 'is not a good fit for resolving issues like qualified immunity which often turns on facts yet to be developed.'" *Johnson v. City of Saginaw*, No. 17-CV-13174, 2018 U.S. Dist. LEXIS 169236, at *8 (E.D. Mich. Aug. 30, 2018) (quoting *Atkins v. Pickard*, 298 F. App'x 512, 513 (7th Cir. 2008)). Indeed, Williams acknowledges, and this Court finds that it would be inappropriate for the Court to resolve the qualified immunity defense "at [the] pleading stage where factual disputes exist."

For all these reasons, the Court denies Williams' Motion to Strike.

**B.** **Williams Motion for Leave and Williams' Motion to Strike Giant Eagle's Reply.**

Before turning to the merits of Giant Eagle's Motion to Dismiss, the Court will first address Williams' Motion for Leave and Williams' Motion to Strike Giant Eagle's Reply

"Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)); *accord Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010) ("This Court grants leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply"). When a reply, however, does not include new arguments or evidence, a sur-reply is "an impermissible attempt to have the last word." *Attractive Surgical, LLC v. Cleveland Clinic Found.*, No. 1:19 CV 1212, 2019 U.S. Dist. LEXIS 234565, at *10 (N.D. Ohio Oct. 31, 2019). The decision of whether to allow a sur-

8

reply is "left to the broad discretion of the trial court." *Carter v. Paschall Truck Lines, Inc.*, 364 F.Supp.3d 732, 748 (W.D. Ky. 2019).  Here, in the Motion for Leave, Williams requests leave to file a Surreply "to address new mischaracterizations and misleading assertions raised for the first time in" Giant Eagle's Reply.  (Doc. No. 22, PageID #172.)  Upon review of Giant Eagle's Reply, the Court does not find that Giant Eagle raised any new arguments or evidence that would warrant a Surreply.  The Court therefore denies the Motion for Leave.

For the same reasons, the Court denies Williams' Motion to Strike Giant Eagle's Reply.  As with his Motion for Leave, Williams premises his Motion to Strike Giant Eagle's Reply on supposed new arguments raised in Giant Eagle's Reply and supposed mischaracterizations of his arguments. (Doc. No. 25, PageID #188.)  The Court therefore exercises its discretion to not strike Giant Eagle's Reply.  *Pearce v. Chrysler Grp., L.L.C. Pension Plan*, 615 F. App'x 342, 349 (6th Cir. 2015).

### C.    Giant Eagle's Motion to Dismiss

#### 1.    Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).  For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief

above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 2. Count One (False Arrest under 42 U.S.C. § 1983), Count Two (Malicious Prosecution under 42 U.S.C. § 1983), and Count Seven (Due Process Violation)[2]

Giant Eagle argues that the Court should dismiss Williams' § 1983 claims because he "does

---

[2] The Court construes Count Seven as a claim brought under § 1983.  *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) ("Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States"); *Higgs v. Dupuis*, No. 5:19CV-192-TBR, 2021 U.S. Dist. LEXIS 104359, at *5–6 (W.D. Ky. June 2, 2021) ("Claims for violations of constitutional rights must be brought under 42 U.S.C. § 1983;

not plead any facts that Giant Eagle acted under color of law."  (Doc. No. 17, PageID #138.)  Giant Eagle asserts that to be liable under § 1983 "the person must be a state or local government official or employee," or the person is a private party whose "actions [were] fairly attributable to the state."  (*Id.*)  Giants Eagle argues that "this is not the case here" because Williams "failed to sufficiently plead that Giant Eagle was a state actor."  (*Id.* at PageID #138–39.)  In response, Williams argues that "[w]hen private parties knowingly participate in unlawful arrests through collaboration with police, courts recognize them as acting under color of state law" and that "Giant Eagle's coordinated efforts, surveillance handover, and accusatory conduct fall squarely within this doctrine."  (Doc. No. 19, PageID #160.)  In its Reply, Giant Eagle argues that "not a single fact exists in [Williams'] Amended Complaint that describes any of Giant Eagle's conduct, let alone Giant Eagle's 'involvement' in his arrest."  (Doc. No. 20, PageID #163.)

"A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct."  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  Likewise, the Due Process Clause "applies to the action by the government, not action by private entities."  *United States v. Folad*, 877 F.3d 250, 251 (6th Cir. 2017) (citing *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 166 (1978)).

Williams correctly points out, however, that there are exceptions to the general rule.  "[A] private party can be fairly said to be a state actor if (1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the State' and (2) the offending party 'acted together

---

*Stebelton v. Bloom Twp. Bd. of Zoning Appeals*, No. 2:09-CV-808, 2010 U.S. Dist. LEXIS 39525, at *5–6 (S.D. Ohio Apr. 21, 2010) ("The Stebeltons' Complaint alleges a variety of constitutional violations, including substantive and procedural due process violations, a government taking without just compensation, equal protection violations, and conspiracy to violate their civil rights. Each of these claims must be brought pursuant to Section 1983").

with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Tahfs*, 316 F.3d at 590–91 (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).  The Sixth Circuit applies three tests to determine whether a private party is a state actor: the public function test, the state compulsion test, and the nexus test.  *Carl v. Muskegon County*, 763 F.3d 592, 595 (6th Cir. 2014) (citing *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)).  As explained in *Ellison*:

> The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state …."  The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state.  Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison*, 48 F.3d at 195 (internal citations omitted).

Here, Williams does not allege any facts to meet any of these tests.  The only allegations in Williams's Amended Complaint as to Giant Eagle that could possibly implicate a § 1983 claim are: (1) that it "failed to verify the video footage that later exonerated Plaintiff," and (2) that it "exhibited racial bias by falsely identifying Plaintiff and ignoring opportunities to verify innocence."  (Doc. No. 12, ¶¶ 10, 17.)  Construing these allegations in the light most favorable to Williams, the gist of his Amended Complaint is that Williams takes issue with Giant Eagle assisting law enforcement with his arrest in May 2024.  There are no allegations, however, suggesting that Giant Eagle "exercise[d] powers which are traditionally exclusively reserved to the state," that "the state significantly encouraged or somehow coerced" Giant Eagle "either overtly or covertly, to take a particular action so that the choice is really that of the state," or that there is "a sufficiently close relationship" between Giant Eagle and the state.

12

Indeed, Courts have found that mere cooperation with law enforcement, standing alone, does not transform a private entity into a state actor. *See*, *e.g.*, *Boykin v. Van Buren Twp.*, 479 F.3d 444, 452 (6th Cir. 2007) ("We decline to rehash the district court's reasoning on this matter, noting only that Boykin fails to direct us to any authority from this Circuit for the proposition that a private security guard, who merely places a call to police that a suspected shoplifting has occurred, but in no way directly confronts the suspect, can be deemed a state actor for purposes of § 1983"); *Stapleton v. Riddell*, No. 1:09-cv-638, 2009 U.S. Dist. LEXIS 89479, at *6 (S.D. Ohio Sept. 10, 2009) ("Moreover, providing information to the police or responding to questions about a crime does not amount to state action for purposes of section 1983 liability").

Therefore, Williams' § 1983 claims fail as a matter of law because the Amended Complaint does not plausibly allege that Giant Eagle was acting as a state actor. The Court thus dismisses Counts One, Two and Seven as to Giant Eagle.[3]

### 3. Count Three (Civil Rights Violation under 42 U.S.C. § 1981)

In its Motion to Dismiss, Giant Eagle argues that Williams' § 1981 claim fails because "he did not establish that he belongs to a protected class" and because he failed "to identify the 'loss of an actual' contract interest let alone the contract itself." (Doc. No. 17, PageID 142.) Williams argues in his Opposition that "Giant Eagle's actions interfered with Plaintiff's right to make and enforce contracts on equal terms" and that "[f]alse accusations rooted in racial profiling constitute actionable interference." (Doc. No. 19, PageID #160.) In its Reply, Giant Eagle argues that Williams "must 'himself' have or 'would have rights under the existing or proposed contractual relationship' – but that is not alleged." (Doc. No. 20, PageID 163.)

---

[3] Because the Court finds that Williams has not pled that Giant Eagle was a state actor, the Court declines to address Giant Eagle's alternative arguments that Williams did not allege facts establishing a Constitutional violation.

This Court recently explained the requirements for pleading a plausible § 1981 claim:

> In pertinent part, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "[M]ake and enforce contracts" means "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Sixth Circuit has applied Section 1981 to discrimination in a retail establishment. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). In that context, a plaintiff must plead that (1) plaintiff is a member of a protected class; (2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory. *Id.*

*Jackson v. Walmart, Inc.*, No. 1:23-cv-01110, 2024 U.S. Dist. LEXIS 87962, at *8 (N.D. Ohio May 16, 2024) (Barker, J.).

Here, Williams's Amended Complaint does not allege any of the essential elements of a Section 1981 claim. Even assuming that an allegation that Giant Eagle "exhibited racial bias" is sufficient to establish that Williams is a member of a protected class, Williams does not allege any facts supporting the other elements of the claim. Accordingly, the Court dismisses Count Three as to Giant Eagle.

### 4.    Count Four (Defamation)

In its Motion to Dismiss, Giant Eagle argues that Williams "makes conclusory, blanket allegations" to support his defamation claim. (Doc. No. 17, PageID #147.) Giant Eagle also argues that the statements alleged in the Amended complaint are absolutely privileged because "the [alleged] statements report Plaintiff's alleged criminal acts and are thus afforded protection." (*Id.* at PageID #148.) Giant Eagle alternatively argues that the alleged statements are subject to qualified privilege

14

because "there are no facts that Giant Eagle acted in bad faith or with a reckless disregard for the truth." (*Id.* at PageID #145.)  In his Opposition, Williams argues that "has asserted specific conduct constituting defamation", that "Defendant's motion wrongly characterizes these as conclusory," and that "Ohio law permits these claims to proceed where, as here, a plausible showing of harm is made." (Doc. No. 19, PageID #160.)  In its Reply, Giant Eagle argues, among other things, that "Plaintiff disregards precedent that immunity applies" and that "[n]owhere in Plaintiff's Opposition does he address this issue." (Doc. No. 20, PageID #164.)

Under Ohio law, even if a plaintiff alleges a prima facie claim for defamation, a defamation claim nonetheless fails if the alleged defamatory statement is subject to an absolute or qualified privileged. *Doe v. Univ. of Dayton*, 766 F. App'x 275, 289 (6th Cir. 2019).  Ohio and federal courts are split as to whether statements made to law enforcement are subject to an absolute privilege or to a qualified privilege. *Compare Michael v. Kleiboemer*, No. 3:20-cv-1861, 2024 U.S. Dist. LEXIS 1462, at *10 (N.D. Ohio Jan. 4, 2024) (holding absolute privilege applied to the "reporting [of] supposed criminal activity to a law enforcement agency") *with Al-Menhali v. Marriott Int'l*, No. 1:17 CV 1089, 2019 U.S. Dist. LEXIS 241845, at *38 (N.D. Ohio Mar. 29, 2019) ("Therefore, qualified privilege protects individuals from liability for statements made outside of the above enumerated proceedings, and under narrow circumstances—e.g., statements given to police officers when reporting suspicions of criminal activity"); *see also Carter v. Pristine Senior Living & Post-Acute Care*, 170 N.E.3d 544, 546 (Ohio App. 2d 20210) ("Some Ohio courts hold that statements to police officers are part of a judicial proceeding and are also entitled to absolute privilege.  Other Ohio Courts disagree, holding that statements to police officers are not part of judicial proceeding and are entitled only to a qualified privilege").

15

The Court need not resolve this split today because Williams' defamation claim fails under the lesser qualified privilege standard. Although qualified privilege is an affirmative defense, courts may dismiss a defamation claim at the pleading stage pursuant to that defense. *Yacko v. GM Co.*, No. 1:23-cv-01578, 2024 U.S. Dist. LEXIS 34780, at *33, n.10 (N.D. Ohio Feb. 28, 2024) (Barker, J.); *Green v. Mason*, 504 F. Supp. 3d 813, 832 (S.D. Ohio 2020). The plaintiff "can overcome the defense by establishing that the party acted with actual malice." *SoCal Powersports, Inc. v. Timken Co.*, No. 5:24 CV 2085, 2025 U.S. Dist. LEXIS 79815, at *16 (N.D. Ohio Apr. 28, 2025) (citing *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1290 (Ohio 1995)). Actual malice is defined "as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1091 (S.D. Ohio 2021) (quoting *Zapata v. URS Energy & Constr., Inc.*, No. 3:13 CV 2203, 2015 U.S. Dist. LEXIS 84113, at *7–8 (N.D. Ohio June 29, 2015)). Accordingly, to defeat a qualified privilege defense at the pleading state, the complaint must contain "allegations of actual malice." *Yacko*, 2024 U.S. Dist. LEXIS 34780 at *33; *Green*, 504 F. Supp. 3d at 832 ("To overcome that privilege at the pleading stage then, Green must allege that Defendants acted with actual malice, and also must allege sufficient facts to make that allegation of malice plausible"); *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 638 (S.D. Ohio 2016) ("Without further factual allegations specifically supporting malicious or wanton behavior, as opposed to simply reporting police misconduct, Plaintiff Sollenberger has failed to state a plausible claim for tortious interference with an employment relationship, as well as failed to meet the requirements to overcome a qualified privilege for the reporting of matters of public concern").

The only allegation lodged against Giant Eagle that could conceivably support Williams'

defamation claim is that Giant Eagle "exhibited racial bias by falsely identifying Plaintiff" to the police.[4]  The Court therefore finds that this statement is subject to a qualified privilege.  *Al-Menhali*, 2019 U.S. Dist. LEXIS 241845 at *38; *see also Greer v. Harreld*, No. 2:24-cv-1237, 2025 U.S. Dist. LEXIS 954, at *14 (S.D. Ohio Jan. 3, 2025) (holding statements made to law enforcement "for the prevention or detection of crime" were subject to qualified privilege).  While alleging that Giant Eagle "falsely" identified him, Williams has not alleged that Giant Eagle made this statement with actual malice.  There are no allegations that plausibly establish that Giant Eagle had *knowledge* that the statement was false or that, in identifying him, Giant Eagle acted with reckless disregard as to their truth or falsity. Accordingly, Williams' defamation claim fails as a matter of law because he failed to plead that Giant Eagle acted with actual malice when it "falsely" identified him.

### 5.  Count Five (Negligent Reporting)

Giant Eagle argues in its Motion to Dismiss that "Ohio and federal law does not recognize a 'negligent reporting' claim as pled here" and that Williams "does not allege any facts with particularity as to what Giant Eagle did that would constitute the alleged 'negligent reporting.'" (Doc. No. 17, PageID #149.)  Williams did not respond to this argument in his Opposition.

While some jurisdictions have recognized a cause of action for "negligent reporting," see, e.g. *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016), there is no authority recognizing that claim under Ohio law.  Indeed, Ohio expressly does not recognize a similar cause of action for "negligent misidentification."  *Beckham v. City of Euclid*, 689 F. App'x 409, 417 (6th Cir. 2016) ("Ohio does not recognize the tort of negligence misidentification"); *Foley v. Univ. of Dayton*, 81

---

[4] While Williams does not allege who this statement was made to, he asserts in his Opposition that "the complaint plausibly alleges Giant Eagle acted in concert with law enforcement and caused Plaintiff's arrest under color of law." (Doc. No. 19, PageID #160.)

N.E.3d 398, 402 (Ohio 2016) ("We conclude that there is no cause of action in Ohio for the tort of negligent misidentification").[5]  Because Ohio law does not recognize a claim for negligent reporting, Count Five fails as a matter of law.

### 6.    Count Six (Intentional Infliction of Emotional Distress)

In its Motion to Dismiss, Giant Eagle argues that "[n]othing within the Amended Complaint identifies any conduct by Giant Eagle let alone any fact that gives rise" to an allegation that Williams suffered a "devasting injury as a consequence of intentional conduct so repugnant that it shocks the conscience."  (Doc. No. 17, PageID #149–50.)  Giant Eagle further argues that "[w]ithout any reference to the 'devasting injury' or conduct by Giant Eagle that caused the harm, the claim must be dismissed."  (*Id.* at PageID #150.)  In his Opposition, Williams argues that he "has asserted specific conduct constituting . . . intentional infliction of emotional distress", that "Defendant's motion wrongly characterizes these as conclusory," and that "Ohio law permits these claims to proceed where, as here, a plausible showing of harm is made."  (Doc. No. 19, PageID #160.)  In its Reply, Giant Eagle argues that "the Amended Complaint is devoid of any fact that specifically identifies what Giant Eagle did or did not do."  (Doc. No. 20, PageID #163.)

To succeed on an IIED claim, "a plaintiff must demonstrate that: (1) the defendant intended to cause emotional distress, or knew or should have known that his conduct would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was outrageous and extreme; (3) the

---

[5]  Negligent reporting and negligent misidentification appear to be the same tort with a different label.  *Compare Valladares*, 197 So. 3d at 10–11 ("We cannot turn a blind eye to those who cannot allege malicious prosecution, but nonetheless sustain injuries due to incorrect reports to police. At the same time, we recognize the importance of encouraging citizens to report suspected crimes. Therefore, we hold that a cause of action for negligent reporting arises when there is incorrect reporting plus conduct on the part of the reporting party that rises to the level of punitive conduct."); *with Sygula v. Regency Hosp. of Cleveland East*, 64 N.E.3d 458, 469 (Ohio App. 8th Dist. 2016) ("The elements for the tort of negligent identification, or mis-identification, exist for persons who are negligently improperly identified as being responsible for committing a violation of law and who suffer injury as a result of the wrongful identification").

18

defendant's conduct was the proximate cause of plaintiff's psychic injuries; and (4) the plaintiff's emotional distress was serious, and of such a nature that no reasonable person could be expected to endure it." *Spencer v. Cleveland Clinic Found.*, No. 1:21-cv-01909, 2022 U.S. Dist. LEXIS 132875, at *16 (N.D. Ohio July 26, 2022) (Barker, J.) (citing *Bolaner v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005)). "Conduct is 'extreme and outrageous' when it 'go[es] beyond all possible bounds and decency, and [would] be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Yeager v. Local Union*, 453 N.E.2d 666, 671 (Ohio 1983)).

While Williams alleges that he suffered emotional distress, he fails to allege that Giant Eagle intended to cause him emotional distress or that Giant Eagle's conduct was extreme and outrageous. Even if he had, Ohio courts have found that accusing someone of a crime is not "extreme and outrageous." *Stakich v. Russo*, No. 20 CA 109392, 2021 Ohio App. LEXIS 1124, at *10 (Ohio App. 8th Apr. 1, 2021) ("The reporting of a crime is 'ordinary and reasonable' behavior and should not be considered 'outrageous' as is required to prove a claim of intentional infliction of emotional distress"); *Jones v. Wheelersburg Local Shc. Dist.*, No. 12CA3513, 2013 Ohio App. LEXIS 3807, at *21 (Ohio App. 4th Aug. 19, 2013) ("accusing an individual of a crime and investigating an individual suspected of a crime generally are not sufficient, standing alone, to demonstrate extreme and outrageous conduct"). Therefore, Williams' IIED claim fails as a matter of law.

### 7. Count Eight (Unjust Enrichment/Conversion)

In its Motion to Dismiss, Giant Eagle argues that Plaintiff's unjust enrichment and conversion claims fail because "[i]t is not enough to level a charge at Giant Eagle that someone 'kept Plaintiff's bond money' when bond money is not something a private party like Giant Eagle could ever receive or retain." (Doc. No. 17, PageID #150.) In his Opposition, Williams argues that he "has asserted

specific conduct constituting . . . conversion", that "Defendant's motion wrongly characterizes these as conclusory," and that "Ohio law permits these claims to proceed where, as here, a plausible showing of harm is made." (Doc. No. 19, PageID #160.) In its Reply, Giant Eagle argues that "the Amended Complaint is devoid of any fact that specifically identifies what Giant Eagle did or did not do." (Doc. No. 20, PageID #163.)

To plead an unjust enrichment claim, a plaintiff must allege that "(1) he conferred a benefit upon a defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, 569 F.Supp.3d 702, 716 (N.D. Ohio 2021) (Barker, J.) (quoting *RG Long & Assocs. v. Kiley*, No. CA2014-10-129, 2015 Ohio App. LEXIS 2363, at *5 (Ohio App. 12th June 22, 20215)). The only allegation supporting this claim is that "Defendants kept Plaintiff's bond money despite dismissal." (Doc. No. 12, ¶ 13.) There is nothing in the Complaint that plausibly alleges that Williams gave his "bond money" to Giant Eagle (a private entity). *See* O.R.C. § 2937.22(C) ("All bail shall be received by the clerk of the court, deputy clerk of court, or by the magistrate, or by a special referee appointed by the supreme court pursuant to section 2937.46 of the Revised Code, and, except in cases of recognizances, receipt shall be given therefor"). Thus, the Amended Complaint is devoid of any plausible allegations that Williams conferred a benefit upon Giant Eagle.

Williams' conversion claim fails for the same reason. Under Ohio law, "the elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights, and (3) damages." *Goodwin v. Am. Marine Express, Inc.*, No. 1:18-CV-01014, 2021 U.S. Dist.

LEXIS 41649, at *84 (N.D. Ohio Mar. 5, 2021) (Barker, J.) (quoting *Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677, 700 (S.D. Ohio 2012)).  The Amended Complaint contains no allegations plausibly suggesting that Giant Eagle dispossessed Williams of his "bond money."  *See* O.R.C. § 2937.22(C).  Accordingly, Williams' conversion claim fails.[6]

In sum, the Court finds that Williams' Amended Complaint fails to state a claim against Giant Eagle.

**D.  Office Depot's Motion to Strike**

Office Depot asks the Court to strike Plaintiff's Opposition to its Motion to Dismiss because Plaintiff's Opposition was 14-days late and Plaintiff did not seek an extension of time to file the Opposition.  In the interest of justice, the Court, in its discretion, will decline to strike the Opposition.  *Pearce*, 615 F. App'x at 349.  As explained below, even after considering Plaintiff's arguments in his Opposition, the Court finds that the Amended Complaint fails to state a claim against Office Depot.

**E.  Office Depot Motion to Dismiss**

**1.  Count One (False Arrest under 42 U.S.C. § 1983), Count Two (Malicious Prosecution under 42 U.S.C. § 1983), and Count Seven (Due Process Violation)**

Like Giant Eagle, Office Depot argues that Williams' § 1983 claims "will usually not lie against a private entity such as Office Depot" and none of the Sixth Circuit tests—to determine whether a private party is a state actor—"are alleged here."  (Doc. No. 38, PageID #239–40.)  It also asserts that the Court should dismiss Count Seven because "the Due Process Clause protects individuals only from governmental and not from private action."  (*Id.* at PageID #249.)

---

[6] Having found that the Amended Complaint fails to state a claim against Giant Eagle, the Court declines to address Giant Eagle's broad assertions that the entire Amended Complaint fails under the doctrines of absolute immunity and qualified immunity.

In his Opposition, Williams asserts that the theories for holding private parties liable under §
1983 "are fact-intensive" and that "Courts routinely deny dismissal when the complaint alleges joint
participation or coordinated action — as Plaintiff has here."  (Doc. No. 39, PageID #257.)  Williams
also asserts several facts regarding the alleged arrest that are not contained in his Amended
Complaint.  (*Id.* at PageID #256.)

In its Reply, Office Depot argues that "as Plaintiff doesn't allege any such conduct or
circumstances in his Amended Complaint, he cannot do so now in his response to Office Depot's
Motion to Dismiss, for, as addressed above, in analyzing whether dismissal is appropriate, the Court
cannot take into account additional facts asserted in a memorandum opposing the Motion to Dismiss."
(Doc. No. 44, PageID #281.)  It further argues that Williams did not identify "factual allegations in
the Amended Complaint that are sufficient to overcome dismissal at this stage" and did not identify
any "specific actions" that would "transform a private entity into a state actor."  (*Id.* at PageID #281–
82.)

The Court agrees with Office Depot that the Court's review is limited to allegations raised in
the Amended Complaint and that it cannot consider any factual allegations raised in Williams Reply.
Upon review of the allegations against Office Depot, Plaintiff fails to state a 1983 claim against Office
Depot.  The only actions Williams attributes to Office Depot that could implicate a § 1983 claim are:
(1) that it "failed to verify the video footage that later exonerated Plaintiff," and (2) that it "exhibited
racial bias by falsely identifying Plaintiff and ignoring opportunities to verify innocence."  (Doc. No.
12, ¶¶ 10, 17.)  Again, the gist of the Amended Complaint is that Office Depot (a private entity)
assisted law enforcement with Williams' arrest.  There are no allegations that would transform Office
Depot into a state actor.  Williams did not allege that Office Depot "exercise[d] powers which are

22

traditionally exclusively reserved to the state," that "the state significantly encouraged or somehow coerced" Office Depot "either overtly or covertly, to take a particular action so that the choice is really that of the state," or that there is "a sufficiently close relationship" between Office Depot and the state.  Further, as explained above, mere cooperation with law enforcement does not transform a private actor into a state actor.  Therefore, Counts One, Two and Seven fail as a matter of law as to Office Depot.

### 2.    Count Three (Civil Rights Violation under 42 U.S.C. § 1981)

In its Motion to Dismiss, Office Depot makes a similar argument to Giant Eagle's argument regarding Williams § 1981 claim: "Plaintiff has failed to plead an impaired contractual right or relationship with Defendant Office Depot."  (Doc. No. 38, PageID #243.)  Williams did not respond to this argument.  The Court finds that Plaintiff did not allege a plausible § 1981 claim against Office Depot. Even if an allegation that Office Depot "exhibited racial bias" is sufficient to establish that Williams is a member of a protected class, Williams does not allege any facts supporting the other elements of the claim.  The Court thus dismisses Plaintiff's 1981 claim against Office Depot.

### 3.    Count Four (Defamation)

In its Motion to Dismiss, Office Depot makes three arguments regarding Williams' defamation claim:  "(1) the claim is untimely under the statute of limitations, (2) Office Depot has immunity from civil liability for any statements made to police offices, and (3) the claim fails to set forth the substance of any defamatory statements by Office Depot."  (Doc. No. 38, PageID #243.)  In his Opposition, Williams argues that he has "alleged that false statements were made to police and used to justify an arrest" and that "whether the statements are actionable is a fact question."  (Doc. No. 29, PageID #259.)   Office Depot responds in its Reply that even if "Plaintiff based his defamation" on an allegation that false statements were made to the police, "the defamation claim

was barred because (i) it was untimely, (ii) Office Depot enjoyed absolute or qualified immunity for such statements, and (iii) the Amended Complaint failed to set forth the substance of any alleged defamatory statements." (Doc. No. 44, PageID #284–85.)

As with the claims against Giant Eagle, the only allegation lodged against Office Depot that could conceivably support Williams' defamation claim is that Office Depot "exhibited racial bias by falsely identifying Plaintiff" to the police. As explained *supra*, this statement is subject to a qualified privilege. Williams has not alleged any facts that would plausibly establish that Office Deport acted with actual malice sufficient to defeat the defense at the pleading stage. Accordingly, Williams' fails to state a plausible defamation claim against Office Depot.

### 4.    Count Five (Negligent Reporting)

Office Depot correctly argues in its Motion to Dismiss that negligent reporting "is not a recognized cause of action in Ohio." (Doc. No. 38, PageID #247.) Williams does not dispute this in his Opposition. Thus, Count Five fails to state a claim against Office Depot.

### 5.    Count Six (Intentional Infliction of Emotional Distress)

Office Depot generally argues that "Plaintiff's Amended Complaint wholly fails to allege essential elements to support his list of claims." (Doc. No. 38, PageID #238.) Office Depot also argues, with respect to Williams' IIED claim that it is barred by the statute of limitations and that its "arguments that Office Depot enjoyed immunity for Plaintiff's defamation claim, equally apply to any claim for intentional infliction of emotional distress against Office Depot." (*Id.* at PageID #248.) In response, Williams argues that Office Depot "cannot argue 'no extreme conduct' while simultaneously denying involvement" and its "argument rely on facts outside the pleadings." (Doc. No. 39, PageID #259.) Office Depot argues in its Reply that its arguments regarding timelines, immunity, and the complaint's sufficiency are appropriate for determination under Rule 12(b)(6).

24

(Doc. No. 44, PageID #287.)

As with Williams' claims against Giant Eagle, he does not allege that Office Depot intended to cause him emotional distress or that Giant Eagle's conduct was extreme and outrageous.  And merely accusing someone of a crime is not "extreme and outrageous."  Therefore, Williams' IIED claim fails as a matter of law.

### 6.  Count Eight (Unjust Enrichment/Conversion)

Office Depot argues in its Motion to Dismiss that Williams' "unjust enrichment and conversion claims can apply only to the alleged retention of his bond money, which of course has no connection to Defendant Office Depot, a private entity."  (Doc. No. 38, PageID #250 (internal citation omitted).)  In his Opposition, Williams argues that "[t]he unjust enrichment claim is not about physically holding the bond, but about gaining advantage or benefit from Plaintiff's arrest and detention."  (Doc. No. 39, PageID #260.)  In its Reply, Office Depot argues that "[u]njust enrichment and conversion . . . apply only to financial or property benefits."  (Doc. No. 44, PageID #288.)

For the same reasons set forth above, the Court finds that the Amended Complaint does not plausibly establish that Office Depot kept Williams' bond money.  In addition, the Court finds that the Amended Complaint does not provide any factual allegation supporting Williams' argument that his unjust enrichment claim is "about gaining advantage or benefit from Plaintiff's arrest and detention."  Even if it did, such an allegation does not establish that Williams conferred a benefit to Office Depot, which is a necessary element of an unjust enrichment claim.  Further, that allegation cannot sustain a conversion claim because a conversion claim only applies to the taking of personal property.  *See Honey Crest Acres, LLC v. Rice Drilling D, LLC*, 723 F. Supp. 3d 617, 625 (S.D. Ohio 2024) ("A conversion claim can only be asserted for personal property, not real property"); *Sandy v.*

25

*Rataiczak*, No. 08 NO 347, 2008 Ohio App. LEXIS 5192, at *5 (Ohio App. 7th Dist. Nov. 25, 2008)

("The conversion claim is not justiciable because conversion only applies to personal property").

Thus, Williams' unjust enrichment and conversion claims fail to state a claim against Office Depot.

In sum, the Court finds that Williams' Amended Complaint fails to state a claim against Office Depot.

IV.     **Conclusion**

For the reasons set forth herein:

1.      Williams' Motion to Strike Affirmative Defenses (Doc. No. 26) is DENIED;

2.      Williams' Motion for Leave (Doc. No. 22) is DENIED;

3.      Williams' Motion to Strike Giant Eagle's Reply (Doc. No. 25) is DENIED;

4.      Giant Eagle's Motion to Dismiss (Doc. No. 17) is GRANTED;

5.      Office Depot's Motion to Strike (Doc. No. 43) is DENIED; and

6.      Office Depot's Motion to Dismiss (Doc. No. 38) is GRANTED.

**IT IS SO ORDERED.**

                                        *s/Pamela A. Barker*
                                        PAMELA A. BARKER
Date:  January 15, 2026                 U. S. DISTRICT JUDGE

26