**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**Andre Williams,**

**Plaintiff,**

**-vs-**

**City of Willoughby, et al.**

**Defendants.**

**Case No. 1:25-cv-00898-PAB**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending before the Court is Defendants City of Willoughby ("Willoughby") and Officer Sevel's ("Sevel") (collectively, the "Willoughby Defendants") Motion for Judgment on the Pleadings (the "Motion"). (Doc. No. 51.) Plaintiff Andre Williams ("Williams") filed an Opposition, to which the Willoughby Defendants replied. (Doc. Nos. 53, 54.) For the following reasons, the Motion (Doc. No. 51) is GRANTED.

## I. Allegations in the FAC

Williams' First Amended Complaint (the "FAC") sets forth the following factual allegations:

> 8. Plaintiff was arrested in May 2024 for a theft he did not commit.
>
> 9. The accusation was based on unverified vehicle data and unconfirmed identity.
>
> 10. Defendants failed to verify the video footage that later exonerated Plaintiff.
>
> 11. Plaintiff spent a day in jail and was publicly humiliated.
>
> 12. Charges were dismissed after months of emotional and reputational harm.
>
> 13. Defendants kept Plaintiff's bond money despite dismissal.
>
> 14. Plaintiff lost his car rental business and paused the launch of his paperwork service.

15. Plaintiff experienced emotional and physical breakdown including PTSD, anxiety, weight gain, and sleeplessness.

16. His daughter was emotionally impacted, and the community ridiculed Plaintiff and his family.

17. Defendants exhibited racial bias by falsely identifying Plaintiff and ignoring opportunities to verify innocence.

(Doc. No. 12, ¶¶ 8–17.) Plaintiff brings eight claims for relief in his FAC:

1. Count I – False Arrest (42 U.S.C. § 1983);
2. Count II – Malicious Prosecution (42 U.S.C. § 1983);
3. Count III – Civil Rights Violation (42 U.S.C. § 1981);
4. Count IV – Defamation;
5. Count V – Negligent Reporting;
6. Count VI – Intentional Infliction of Emotional Distress;
7. Count VII – Due Process Violation
8. Count VIII – Unjust Enrichment/Conversion.

## II. Procedural History

On May 5, 2025, Williams initiated this action by filing his Complaint, naming Willoughby, Sevel, Giant Eagle, Inc. and Office Depot, LLC as defendants.[1] (Doc. No. 1.) On July 11, 2025, Williams filed his FAC. (Doc. No. 12.) On August 8, 2025, the Willoughby Defendants filed their Answer to the FAC. (Doc. No. 21.)

On March 30, 2026, the Willoughby Defendants filed their Motion. On April 6, 2026, Williams filed his Opposition to the Motion. (Doc. No. 53.) On April 20, 2026, the Willoughby

[1] The Court dismissed Williams' claims against Giant Eagle, Inc. and Office Depot, LLC on January 15, 2026. (Doc. No. 47.)

Defendants filed their Reply. (Doc. No. 54.) Accordingly, the Motion is ripe for the Court's review.

## III. Analysis

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only

enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### B. Count One (False Arrest under 42 U.S.C. § 1983), Count Two (Malicious Prosecution under 42 U.S.C. § 1983), and Count Seven (Due Process Violation)[2]

#### 1. Plaintiff has not alleged sufficient allegations to render Willoughby liable for the alleged constitutional violations

In the Motion, the Willoughby Defendants, citing to *Monell v. N.Y. City Dep't of Soc. Servs.*,

[2] The Court construes Count Seven as a claim brought under § 1983. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) ("Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States"); *Higgs v. Dupuis*, No. 5:19CV-192-TBR, 2021 U.S. Dist. LEXIS 104359, at *5–6 (W.D. Ky. June 2, 2021) ("Claims for violations of constitutional rights must be brought under 42 U.S.C. § 1983);

436 U.S. 658 (1978), assert that "[i]t is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983." (Doc. No. 51, PageID #352.) The Willoughby Defendants further assert that "the Complaint does not bring a *Monell* claim or set forth any allegations suggestive of one, foreclosing any liability against the City under § 1983" and that "[t]here are no allegations that the City's official policies or governmental customs led to the alleged constitutional violations, nor any allegations that otherwise suggest the City was the 'moving force' behind his constitutional injuries." (*Id.*) The Willoughby Defendants argue that "Plaintiff's generalized allegations of actions taken by all "Defendants" cannot be said to plausibly allege a Monell claim." (*Id.*) Willliams did not respond to these arguments in his Opposition.

A municipality is not liable for injuries inflicted solely by its employees or agents under § 1983. *See*, *e.g.*, *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015). Rather, "[m]unicipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of plaintiff's constitutional rights." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Sixth Circuit law recognizes four theories of *Monell* liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority

---

*Stebelton v. Bloom Twp. Bd. of Zoning Appeals*, No. 2:09-CV-808, 2010 U.S. Dist. LEXIS 39525, at *5–6 (S.D. Ohio Apr. 21, 2010) ("The Stebeltons' Complaint alleges a variety of constitutional violations, including substantive and procedural due process violations, a government taking without just compensation, equal protection violations, and conspiracy to violate their civil rights. Each of these claims must be brought pursuant to Section 1983").

ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence [to] federal rights violations." *See*, *e.g.*, *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Simply put, there are no allegations in the FAC asserting any of these four theories of *Monell* liability. Without factual allegations supporting a *Monell* claim, Williams' § 1983 claims fail as a matter of law against Willoughby. *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 698 (6th Cir. 2018) ("Here, as in *Gonzalez*, plaintiffs' complaint failed to allege a single fact that suggests, plausibly or otherwise, that the Detroit Police Officers' purported Fourth Amendment violations were the result of a custom, policy, or practice of the City of Detroit. The district court therefore properly dismissed this count of plaintiffs' complaint") (cleaned up); *Breanna Ray v. Erie Cnty. Bd. of Comm'rs*, No. 3:34-cv-1276, 2026 U.S. Dist. LEXIS 36002, at *19 (N.D. Ohio Feb. 23, 2026) ("Because Plaintiffs do not identify a policy, custom, pattern, training deficiency, or a final policymaker decision sufficient to satisfy a recognized basis for municipal liability under *Monell*, I grant Defendants' motion to dismiss the § 1983 claim against ECBC").

Accordingly, for these reasons, the Court dismisses Counts One, Two and Seven against Willoughby.

**2. Counts One, Two and Seven fail to state plausible claims against Sevel**

**i. Count One**

In the Motion, the Willoughby Defendants argue that "Count I against the City and Officer Sevel is premised on the notion that Plaintiff was arrested without established probable cause." (Doc. No. 51, PageID #352.) They assert that "[o]n March 30, 2024, Officer Sevel submitted an affidavit in support of probable cause" and that "[o]n April 5, 2024, a probable cause warrant issued by a neutral and detached magistrate based on [Officer Sevel's] statements [in the affidavit], and Plaintiff

was served with the same and arrested on May 13, 2024." (*Id.*) The Willoughby Defendants argue that "[i]n light of the probable cause warrant supporting his arrest, Plaintiff cannot state a plausible false arrest § 1983 claim." (*Id.*)

In his Opposition, Williams argues that the "affidavit states only that Plaintiff's BMV photograph 'does match' the surveillance footage" and that "[i]t does not explain how that conclusion was reached." (Doc. No. 53, PageID #380.) Williams asserts that the affidavit does not contain a "description of the suspect's height," a "comparison of height to Plaintiff," a "description of body build," a "comparison of body build," a "description or comparison of hair," an "explanation of what features 'matched,'" a "measurement or estimation from the surveillance footage," and a "reference to any identification methodology." (*Id.*) Williams asserts that "[i]nstead, the affidavit relies on: vehicle association[,] familial relationship[,] prior citation involving vehicle[,] and prior theft-related history." (*Id.*) According to Williams, "[t]hese facts do not explain how the individual in the surveillance footage was identified as Plaintiff" and that "[t]he absence of any articulated identification method demonstrates that the conclusion was not analytical, but conclusory." (*Id.*) Williams argues that "[b]ecause the affidavit does not document how the identification was made, and Plaintiff challenges that identification, the issue of probable cause cannot be resolved without factual development." (*Id.* at PageID #381.) Williams further asserts, without citation, that "a warrant does not shield an officer where: the affidavit is based on incomplete or unsupported conclusions[,] material identifying characteristics are not analyzed or documented[,] and the identification lacks a reasonable basis." (*Id.*) Williams' final argument is that "[w]ithout discovery, Plaintiff cannot test the basis of Defendants' conclusions." (*Id.* at PageID #382.)

The Willoughby Defendants argue in their Reply that "[a]s a matter of law, a facially valid

warrant is a complete defense to a false arrest claim, and Plaintiff offers no case law in support of his argument to the contrary." (Doc. No. 54, PageID #390.) The Willoughby Defendants argue that "Plaintiff also fails to acknowledge that there are no facts in his Amended Complaint to show that Officer Sevel or Willoughby recklessly disregarded evidence or made false statements." (*Id.*) The Willoughby Defendants assert "the pleadings and the public records attached to the Motion for Judgment on the Pleadings show that Officer Sevel reviewed surveillance footage; discussed the matter with the Giant Eagle Loss Prevention Officer who saw Plaintiff get into a car; verified Plaintiff's BMW photo; and confirmed Plaintiff's LEADs and OLEN information and familial information." (*Id.*) The Willoughby Defendants further assert that Williams' belief that "Officer Sevel should have explained exactly how he matched Plaintiff's BMV photograph to the surveillance video or that the arrest was not based upon an 'articulated method' is irrelevant." (*Id.*) They argue that "[a]s a matter of law, Officer Sevel's affidavit demonstrates that there was a probability of criminal activity, which was confirmed by a magistrate after a probable cause hearing occurred." (*Id.*)

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). Here, Plaintiff alleges that he "was arrested in May 2024 for a theft he did not commit," that "[t]he accusation was based on unverified vehicle data and unconfirmed identity," and that "Defendants failed to verify the video footage that later exonerated Plaintiff." (FAC ¶¶ 8–10.) Construing these *pro se* allegations liberally in Williams' favor, the Court finds that Williams has alleged that Officer Sevel lacked probable cause to arrest him.

But Williams' arrest was supported by a valid arrest warrant.[3] "A showing of 'probable cause provides a complete defense to a claim of false arrest.'" *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (quoting *Halasah v. City of Kirtland*, 574 F. App'x. 624, 629 (6th Cir. 2014)). "[A] facially valid arrest warrant is normally sufficient to establish probable cause to arrest," but "an arrest warrant's presumption of validity gives way when an officer knowingly falsifies the materials supporting the magistrate's issuance of it." *Chancellor v. Geelhood*, 168 F.4th 388, 401 (6th Cir. 2026) (citing *Voyticky*, 412 F.3d at 677). Here, Williams challenges the validity of the arrest warrant—i.e. that further investigation would have revealed that Williams was not the person described in the arrest warrant. The fact that Williams was misidentified, however, does not render the arrest warrant invalid. *Synder v. United States*, 990 F. Supp. 2d 818, 831 (S.D. Ohio 2014) ("That the information identifying Plaintiff as Stephanie Snyder's accomplice ultimately proved to be false does not mean that probable cause did not support the original issuance of the warrant"). And there are no facts in the FAC relating to the issuance of the arrest warrant or plausibly demonstrating that Sevel knew the information he submitted was false. *Duncan v. City of Maple Heights*, No. 1:25-cv-02301, 2026 U.S. Dist. LEXIS 188320, at *11 (N.D. Ohio Aug. 21, 2026) (dismissing false arrest claim when, among other things, "[t]he complaint does not allege or suggest that the arrest warrant was falsified or that Defendants obtained it by misleading the issuing judge"); *Staples v. Jillerat*, No. 1:17-cv-742, 2018 U.S. Dist. LEXIS 133590, at *10 (S.D. Ohio Aug. 8, 2018) ("Here, plaintiff's

---

[3] The Willoughby Defendants contend that this Court can consider the arrest warrant, which is attached to their Motion, and not the FAC. Williams does not oppose this argument and instead references the arrest warrant in his Opposition. The Court agrees with the Willoughby Defendants, particularly in light of Williams' non-opposition. *See KBC Asset Mgmt. N.V. v. Omnicare, Inc. (In re Omnicare, Inc. Sec. Litig.)*, 769 F.3d 455, 466 (6th Cir. 2014) ("However, we have recognized that if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment"); *see also Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists*, 905 F.3d 421, 425–26 (6th Cir. 2018) ("Such public records that a court may consider include documents from other court proceedings").

complaint fails to allege specific facts relating to the probable cause determination surrounding the issuance of his arrest warrant out of New York state. Accordingly, plaintiff's claims of false arrest and false imprisonment should be dismissed because there was probable cause for both arrests").

For these reasons, the Court dismisses Count One against Sevel.

**ii. Count Two**

In the Motion, the Willoughby Defendants argue that "Count II attempts to bring a malicious prosecution claim against the City and Officer Sevel, which is likewise premised on the notion that probable cause for Plaintiff's prosecution was lacking." (Doc. No. 51, PageID #353.) According to the Willoughby Defendants "based on the then-known facts and the warrant issued by the neutral and detached magistrate, there was probable cause to prosecute Plaintiff based on the surveillance footage, visual confirmation by the Giant Eagle employee, and Plaintiff's receipt of previous citations in temporal proximity to the date of the subject arrest." (*Id.* at PageID #354.) They assert that "[t]he prosecutor's eventual decision to dismiss the charges does not undo the existing probable cause at the time the decision to charge was made." (*Id.*) The Willoughby Defendants finally assert that "[t]here are no further acts allegedly undertaken by Officer Sevel and/or the City which suggest involvement in the prosecution beyond the probable cause affidavit at the time the prosecution was initiated." (*Id.*)[4] In his Opposition, Williams makes the same arguments concerning probable cause that were summarized above.

Under federal law, a plaintiff must prove four elements to establish a malicious prosecution claim: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant made,

[4] The Willoughby Defendants also argue that Williams' malicious prosecution claim fails because "[t]he docket does not support, nor does Plaintiff allege, any additional seizure which would make his wrongful prosecution claim actionable." (Doc. No. 51, PageID #354.)

influenced, or participated in the decision to prosecute; (2) that the state lacked probable cause for the prosecution; (3) that the plaintiff suffered a deprivation of liberty because of the legal proceeding; and (4) that the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010); *see also Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021). "The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017). However, "the § 1983 version of 'malicious prosecution' is not limited to the institution of proceedings; it can also support a claim for 'continued detention without probable cause.'" *Id.* (citation omitted).

Here, even assuming Williams' allegations are sufficient to sustain a malicious prosecution claim, his claim fails because the state did not lack probable cause for his prosecution. As explained above, Williams' prosecution was supported by probable cause by virtue of the valid arrest warrant. Because Williams' arrest was supported by probable cause, his malicious prosecution claim fails as a matter of law. *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (stating that the "decisive Fourth Amendment question" for a malicious prosecution claim is "whether [the defendant] had probable cause . . . ."); *Howse v. Hodous*, 953 F.3d 402, 408 (6th Cir. 2020) ("And because there was probable cause for *that* charge, Howse cannot move forward with *any* of his malicious-prosecution claims"); *Duncan*, 2026 U.S. Dist. LEXIS 188320 at *11 (dismissing malicious prosecution claim when, among other things, "[t]he complaint does not allege or suggest that the arrest warrant was falsified or that Defendants obtained it by misleading the issuing judge").

For these reasons, the Court dismisses Count Two against Sevel.

### iii. Count Seven

In the Motion, the Willoughby Defendants argue that "'due process' claim appears only as a bare label in the Complaint." (Doc. No. 51, PageID #355.) They further argue that "Plaintiff fails to even indicate whether such claim alleges a violation of substantive or procedural due process rights." (*Id.*) According to the Willoughby Defendants, "Plaintiff's pro se status does not relieve him of his duty to develop claims with an appropriate degree of specificity, and neither Defendants nor the Court should have to guess at the nature of the claim asserted." (*Id.*) They further argue that "this claim fails to invoke or otherwise rely upon § 1983" and that "even if § 1983 were properly invoked, Plaintiff has not alleged sufficient facts." (*Id.*) Williams does not respond to these arguments in his Opposition.

It is unclear whether Williams is bringing a substantive due process claim or a procedural due process claim. Regardless, Williams has not alleged sufficient facts to allege a plausible due process claim under either theory.

Generally, a plaintiff adequately alleges a substantive due process claim where the plaintiff pleads that a statute or government action burdens a fundamental right and cannot withstand strict scrutiny." *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006). Without a protected interest, a substantive due process claim generally fails. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) ("Because EJS had no protectable interest, its substantive due-process claim must fail") "To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that '(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.'" *EJS*, 698 F.3d at 855 (quoting *Women's Med.*

*Prof's Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).

The Court agrees with the Willoughby Defendants that Williams has not alleged sufficient facts to plead a due process claim. Plaintiff has not alleged what protected interest, if any, the Willoughby Defendants have burdened him with and/or deprived him of. Further, Plaintiff has not alleged any factual allegations that would be sufficient to sustain a plausible procedural due process claim or a substantive due process claim. For these reasons, the Court dismisses Count Seven against Sevel.

**C. Count Three (Civil Rights Violation under 42 U.S.C. § 1981)**

In the Motion, the Willoughby Defendants assert that "not only are there no facts alleged which implicate § 1981, but it is not a proper cause of action against the City and Officer Sevel" because "[t]he Sixth Circuit has routinely held that there is no independent cause of action against municipalities or state actors under § 1981." (Doc. No. 51, PageID #356.) Williams does not respond to this argument in his Opposition.

The Sixth Circuit has indeed held that "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity," *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012), and that "no independent cause of action against municipalities is created by § 1981(c)." *Arendale v. City of Memphis*, 519 F.3d 587, 599 (6th Cir. 2008). Accordingly, Williams' § 1981 claim against the Willoughby Defendants fails as a matter of law.[5]

---

[5] And even if Williams had invoked § 1983, his claims against Willoughby would fail because, as explained above, he has not alleged a plausible *Monell* claim. Further, his claim would fail against Sevel because there are no allegations suggesting that Sevel violated any rights protected by § 1981. *See Hasson Bey v. Ohio*, No. 1:11-CV-01126, 2011 U.S. Dist. LEXIS 114467, at *9–10 (N.D. Ohio Oct. 4, 2011) ("While Hassan Bey may be a member of a racial minority, he does not allege that the Defendants intended to discriminate against him because of his race, or that their actions prevented him from making or enforcing a contract, bringing a lawsuit, giving evidence, or engaging in any of the other activities

**D. Count Four (Defamation)[6]**

In the Motion, the Willoughby Defendants argue that "from what can be inferred from the Complaint's sparse allegations, any such statements from Officer Sevel and the City would have been made in the course of the investigation of the theft allegations in furtherance of their official duties." (Doc. No. 51, PageID #359.) They further argue that "there are no allegations that Officer Sevel or the City acted in bad faith or outside of the scope of their duties." (*Id.*) Plaintiff does not respond to these arguments in his Opposition.

Under Ohio law, even if a plaintiff alleges a prima facie claim for defamation, a defamation claim nonetheless fails if the alleged defamatory statement is subject to an absolute or qualified privilege. *Doe v. Univ. of Dayton*, 766 F. App'x 275, 289 (6th Cir. 2019). "In general, a police officer's allegedly defamatory statement made during the course of an investigation is at least protected by qualified privilege." *Brothers v. County of Summit*, No.5:03 CV 1002, 2007 U.S. Dist. LEXIS 38468, at *89 (N.D. Ohio May 25, 2007) (citing *Davis v. Warrensville Heights*, No. 72722, 1998 Ohio App. LEXIS 117 (Ohio App. 8th Jan. 15, 1998) ("a police officer possesses qualified immunity with respect to statements made in a police report, which can only be overcome by a showing of clear and convincing evidence that the officer made those statements with actual malice"); *Black v. Cleveland Police Dep't*, 644 N.E.3d 682 (Ohio App. 8th July 5, 1994) ("Moreover, the existence of a qualified privilege has been recognized in cases involving allegedly defamatory statements made during the course of criminal or governmental investigations")).

---

described in the statute. There are no factual allegations in his Complaint that address any of the elements of a cause of action under § 1981").

[6] Although the Court has dismissed all federal claims in this case, the Court, in its discretion, will exercise supplemental jurisdiction over Williams' remaining state law claims. *See* 28 U.S.C. § 1367(c).

Although qualified privilege is an affirmative defense, courts may dismiss a defamation claim at the pleading stage pursuant to that defense. *Yacko v. GM Co.*, No. 1:23-cv-01578, 2024 U.S. Dist. LEXIS 34780, at *33, n.10 (N.D. Ohio Feb. 28, 2024) (Barker, J.); *Green v. Mason*, 504 F. Supp. 3d 813, 832 (S.D. Ohio 2020). The plaintiff "can overcome the defense by establishing that the party acted with actual malice." *SoCal Powersports, Inc. v. Timken Co.*, No. 5:24 CV 2085, 2025 U.S. Dist. LEXIS 79815, at *16 (N.D. Ohio Apr. 28, 2025) (citing *A&B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1290 (Ohio 1995)). Actual malice is defined "as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1091 (S.D. Ohio 2021) (quoting *Zapata v. URS Energy & Constr., Inc.*, No. 3:13 CV 2203, 2015 U.S. Dist. LEXIS 84113, at *7–8 (N.D. Ohio June 29, 2015)). Accordingly, to defeat a qualified privilege defense at the pleading state, the complaint must contain "allegations of actual malice." *Yacko*, 2024 U.S. Dist. LEXIS 34780 at *33; *Green*, 504 F. Supp. 3d at 832 ("To overcome that privilege at the pleading stage then, Green must allege that Defendants acted with actual malice, and also must allege sufficient facts to make that allegation of malice plausible"); *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 638 (S.D. Ohio 2016) ("Without further factual allegations specifically supporting malicious or wanton behavior, as opposed to simply reporting police misconduct, Plaintiff Sollenberger has failed to state a plausible claim for tortious interference with an employment relationship, as well as failed to meet the requirements to overcome a qualified privilege for the reporting of matters of public concern").

The only allegation lodged against the Willoughby Defendants that could conceivably support Williams' defamation claim is that the Willoughby Defendants "exhibited racial bias by falsely

identifying Plaintiff." (FAC ¶ 17.) The Court therefore finds that this statement is subject to a qualified privilege. *Brothers*, 2007 U.S. Dist. LEXIS 38468 at *90 ("The fact that the officers conveyed erroneous information gathered in their investigation does not overcome the qualified privilege"); *see also Thomas v. City of Columbus Pub. Safety*, No. 2:10-cv-563, 2011 U.S. Dist. LEXIS 130490, at *7–8 (S.D. Ohio Nov. 10, 2011) (finding statements made by an officer during the course of an investigation protected by qualified privilege). While alleging that the Willoughby Defendants "falsely" identified him, Williams has not alleged that the Willoughby Defendants made this statement with actual malice. There are no allegations that plausibly establish that the Willoughby Defendants had *knowledge* that the statement was false or that, in identifying him, the Willoughby Defendants acted with reckless disregard as to their truth or falsity. Accordingly, Williams' defamation claim fails as a matter of law because he failed to plead that the Willoughby Defendants acted with actual malice when it "falsely" identified him.

**E. Count Five (Negligent Reporting)**

In the Motion, the Willoughby Defendants argue that Plaintiff's "negligent reporting" claim fails "because it is not a cause of action recognized under Federal or Ohio law." (Doc. No. 51, PageID 359.) Plaintiff does not respond to this argument in his Opposition. Previously in this case, this Court found that "[w]hile some jurisdictions have recognized a cause of action for 'negligent reporting,' see, e.g. *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016), there is no authority recognizing that claim under Ohio law. Indeed, Ohio expressly does not recognize a similar cause of action for 'negligent misidentification.'" (Doc. No. 47, PageID 313–14 ( citing *Beckham v. City of Euclid*, 689 F. App'x 409, 417 (6th Cir. 2016) ("Ohio does not recognize the tort of negligent misidentification"); *Foley v. Univ. of Dayton*, 81 N.E.3d 398, 402 (Ohio 2016) ("We conclude that

there is no cause of action in Ohio for the tort of negligent misidentification").) Plaintiff's "negligent reporting" claim is accordingly dismissed.

**F. Count Six (Intentional Infliction of Emotional Distress)**

In the Motion, the Willoughby Defendants argue that "the alleged conduct of Officer Sevel and the City is not sufficiently outrageous to sustain an IIED claim as a matter of law" because "[i]nvestigating an individual suspected of a crime is not sufficient to demonstrate outrageous conduct." (Doc. No. 51, PageID #360.) Plaintiff does not respond to this argument in his Opposition.

To succeed on an IIED claim, "a plaintiff must demonstrate that: (1) the defendant intended to cause emotional distress, or knew or should have known that his conduct would result in serious emotional distress to the plaintiff; (2) the defendant's conduct was outrageous and extreme; (3) the defendant's conduct was the proximate cause of plaintiff's psychic injuries; and (4) the plaintiff's emotional distress was serious, and of such a nature that no reasonable person could be expected to endure it." *Spencer v. Cleveland Clinic Found.*, No. 1:21-cv-01909, 2022 U.S. Dist. LEXIS 132875, at *16 (N.D. Ohio July 26, 2022) (Barker, J.) (citing *Bolaner v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005)). "Conduct is 'extreme and outrageous' when it 'go[es] beyond all possible bounds and decency, and [would] be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Yeager v. Local Union*, 453 N.E.2d 666, 671 (Ohio 1983)).

While Williams alleges that he suffered emotional distress, he fails to allege that the Willoughby Defendants intended to cause him emotional distress. And there are no allegations in the FAC to infer that Willoughby Defendants' conduct was extreme and outrageous. *Treinen v. Vill. of Greenhills*, No. 1:05-CV-448, 2006 U.S. Dist. LEXIS 44340, at *21 (S.D. Ohio June 29, 2006) (dismissing IIED claim when "[a]t most, Officer Patton acted wrongfully by arresting Robert without

probable cause"); *Jones v. Wheelersburg Local Shc. Dist.*, No. 12CA3513, 2013 Ohio App. LEXIS 3807, at *21 (Ohio App. 4th Aug. 19, 2013) ("accusing an individual of a crime and investigating an individual suspected of a crime generally are not sufficient, standing alone, to demonstrate extreme and outrageous conduct"); *Branan v. Mac Tools*, No. 03AP-1096, 2004 Ohio App. LEXIS 5011, at *21 (Ohio App. 10th Dist. Oct. 21, 2004) ("A lawfully conducted investigation where wrongdoing is suspected, even if vigorously or oppressively undertaken, will not be characterized as extreme or outrageous"). Therefore, Williams' IIED claim fails as a matter of law.

### G. Count Eight (Unjust Enrichment/Conversion)

In the Motion, the Willoughby Defendants argue that "the docket of the criminal cases clearly demonstrates that Plaintiff did not pay the bond he seeks to recover." (Doc. No. 51, PageID #361.) They assert that "Tavian Williams, not Plaintiff, was the depositor of the bond payments." (*Id.*) According to the Willoughby Defendants, "Plaintiff was not the payor of the bond in question, and thus lacks standing to demand return of these funds through an action in conversion or unjust enrichment." (*Id.*) The Willoughby Defendants also assert that the state court docket "demonstrates that $225 was returned to Tavian Williams on or about October 25, 2024, and that on January 29, 2026 the Court attempted to get in contact with Mr. Williams regarding the return of remaining unclaimed funds." (*Id.*)

In his Opposition, Plaintiff argues that he "provided the funds used to post the bond," "was physically present during the posting," "was required to transfer those funds to a third party," and "was not permitted to post the bond in his own name." (Doc. No. 53, PageID #382.) According to Plaintiff, "this creates a factual dispute as to: [i] the origin of the funds, [ii] the nature of the transaction, [and] [iii] Plaintiff's interest in those funds." (*Id.*)

The Willoughby Defendants respond in their Reply that "Plaintiff admits that he did not post the bond," and, as a result, "Tavian Williams, not Plaintiff, would have standing to retrieve any remaining funds." (Doc. No. 54, PageID #391.) The Willoughby Defendants also assert that "the Clerk of Courts already attempted to contact Tavian Williams regarding any unclaimed funds" and that "the Clerk of Courts would have the alleged unclaimed funds for Tavian Williams' retrieval." (*Id.*)

To plead an unjust enrichment claim, a plaintiff must allege that "(1) he conferred a benefit upon a defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, 569 F.Supp.3d 702, 716 (N.D. Ohio 2021) (Barker, J.) (quoting *RG Long & Assocs. v. Kiley*, No. CA2014-10-129, 2015 Ohio App. LEXIS 2363, at *5 (Ohio App. 12th June 22, 20215)). The only allegation supporting this claim is that "Defendants kept Plaintiff's bond money despite dismissal." (Doc. No. 12, ¶ 13.) But the state court docket reveals two things, which Plaintiff has not disputed.[7] First, "Tavian Williams," and not Plaintiff, conferred the alleged benefit. Second, the state court docket reflects that the Clerk of Courts has contacted Tavian Williams to return the bond amount. Accordingly, Plaintiff did not confer a benefit upon the Willoughby Defendants, and even if Plaintiff had, the Willoughby Defendants have not retained the benefit under circumstances where it would be unjust to do so without payment. For these reasons,

---

[7] The Court can consider the municipal court docket. *See supra* n.3; *see also Granader v. Public Bank*, 417 F.3d 75, 85 (6th Cir. 1969) ("Federal Courts may take judicial note of proceedings in other courts of record"); *Cresci v. Cresci*, No. 1:24-CV-1279, 2026 U.S. Dist. LEXIS 4984, at *9 (N.D. Ohio Jan. 12, 2026) (considering the Richmond County Probate Court's docket when reviewing a motion to dismiss); *Brown v. Fourmidable Grp., Inc.*, No. 3:25 CV 2486, 2026 U.S. Dist. LEXIS 229881, at *5, n.2 (N.D. Ohio Oct. 7, 2026) ("The Court may take judicial notice of the facts of another court's docket") *Bell v. Midland Funding LLC*, 736 F. Supp. 3d 564, 568 (N.D. Ohio 2024) (taking judicial notice of municipal court docket when analyzing a 12(b)(6) motion to dismiss) (Barker, J.).

Plaintiff's unjust enrichment claim fails.

Williams' conversion claim fails for the same reason. Under Ohio law, "the elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights, and (3) damages." *Goodwin v. Am. Marine Express, Inc.*, No. 1:18-CV-01014, 2021 U.S. Dist. LEXIS 41649, at *84 (N.D. Ohio Mar. 5, 2021) (Barker, J.) (quoting *Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677, 700 (S.D. Ohio 2012)). The Amended Complaint contains no allegations plausibly suggesting that the Willoughby Defendants dispossessed Williams of his "bond money." And the state court docket reveals that the Clerk of Courts has attempted to return the bond money to Tavian Williams. Accordingly, Williams' conversion claim fails.[8]

In sum, the Court finds that Williams' Amended Complaint fails to state a claim against the Willoughby Defendants.

## IV. Conclusion

For the reasons set forth herein, the Motion (Doc. No. 51) is GRANTED.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: October 29, 2026

[8] Having found that the FAC fails to state a claim against the Willoughby Defendants, the Court declines to address the Willoughby Defendants' arguments that they are entitled O.R.C. § 2744 immunity.